Hon. John C. Coughenour

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| NEW SUMMIT PARTNERS CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>GERRY RIDEOUT AND KIM RIDEOUT, individually and their marital community;<br><br>Defendants. | CASE NO. 2:18-cv-01599 JCC<br><br>**MOTION FOR ISSUANCE OF A PREJUDGMENT WRIT OF ATTACHMENT**<br><br>NOTING DATE:  February 1, 2019 |

## I.    INTRODUCTION and RELIEF REQUESTED

Plaintiff New Summit Partners Corp. ("New Summit") requests entry of an Order issuing a Prejudgment Writ of Attachment of the net proceeds of Defendants, Cornwall, LLC ("Cornwall") and Gerald and Kim Rideout ("the Rideouts"), pending sale of real property located at 2516 Cornwall Ave., Bellingham, WA 98225 ("Subject Property"). This motion is made pursuant to RCW 6.25 *et. seq.*

MOTION FOR ISSUANCE OF A PREJUDGMENT
WRIT OF ATTACHMENT - 1
{21731/28712/V609160.DOCX}

LASHER
HOLZAPFEL
SPERRY &
EBBERSON

ATTORNEYS AT LAW
2600 TWO UNION SQUARE
601 UNION STREET
SEATTLE WA 98101-4000
TELEPHONE 206 624-1230
Fax 206 340-2563

Defendants do not dispute that New Summit loaned them the principal amount of $334,000 to assist them in their purchase and renovation of the Subject Property, an eight-unit apartment complex. Nor do they dispute that they entered into a profit sharing agreement, under which Plaintiff is to receive 20% of the profits generated from the Subject Property while collecting rents and at the time of sale. In fact, the Rideouts do not dispute that they agreed to enter into a personal promissory note as security for the loan and that they never executed such a note. However, Defendants have disputed the *amount* of interest and profits they owe Plaintiff New Summit.  In short, this is a case about damages, not liability.

Defendants appear to agree, in concept, that in light of their contractual obligations a certain amount of money from the sale of the Subject Property should be set aside pending resolution of this dispute. However, the number Defendants have proposed to hold back is low and lacks any support. What financials Defendants *have* produced reflect large irregularities in how they have been characterizing expenses and profits, and suggest Defendants have made significantly more money throughout the operation of this building than they have represented to Plaintiff. Thus, Plaintiff is likely owed a much larger amount of money under the profit sharing agreement than Defendants have committed to set aside.

Alarmingly, Plaintiff has recently obtained evidence that the Rideouts began to transfer other real property assets to a newly-created LLC within 24 hours of Plaintiff New Summit's demand that they execute the promised security documents or risk being sued.  To be clear, the Rideouts transferred real property that was in their names personally, knowing full well that they

**MOTION FOR ISSUANCE OF A PREJUDGMENT WRIT OF ATTACHMENT** - 2
{21731/28712/V609160.DOCX}

LASHER
HOLZAPFEL
SPERRY &
EBBERSON

ATTORNEYS AT LAW
2600 TWO UNION SQUARE
601 UNION STREET
SEATTLE WA 98101-4000
TELEPHONE 206 624-1230
Fax 206 340-2563

had agreed to be personally liable for the debt owed to Plaintiff New Summit. Plaintiff is justifiably concerned that by proposing a low amount of money be held pending resolution of this dispute, Defendants are intentionally minimizing the amount of money available to satisfy their obligations to Plaintiff, while simultaneously depleting possible assets that would otherwise be available to satisfy a judgment in excess of the amount they wish to set aside.

Plaintiff has no interest in interfering with the sale of the Subject Property and welcomes a timely and uncomplicated closing process. However, assuming that the pending Purchase and Sale Agreement ("P&SA") actually closes on February 13, 2019, New Summit is owed and should be paid no less than **$497,725.00** from those funds.  This amount consists of the following elements:

- Loan Amount: $334,000;
- Interest on Loan: $47,539; and
- 20% Profit Sharing Payment: not less than $116,186.

Critically, this number is based on financial statements that Defendants provided without any supporting documentation. As a result, it is possible that the 20% profit sharing component may *exceed* $116,186.  Even more, without an accurate closing statement from the projected sale on February 13, 2019, New Summit is unable to fully analyze the transaction to determine the net proceeds from the sale. Given the sizeable amount of money Plaintiff is owed under its agreements with the Defendants and given Defendants' abrupt attempts to transfer assets after receiving notice of this litigation, New Summit requests the Court grant its motion for Prejudgment Writ of Attachment and enter an Order protecting an appropriate amount of the net proceeds from the sale, pending final resolution of this dispute.

**MOTION FOR ISSUANCE OF A PREJUDGMENT WRIT OF ATTACHMENT** - 3
{21731/28712/V609160.DOCX}

LASHER HOLZAPFEL SPERRY & EBBERSON

ATTORNEYS AT LAW
2600 TWO UNION SQUARE
601 UNION STREET
SEATTLE WA 98101-4000
TELEPHONE 206 624-1230
Fax 206 340-2563

## II. STATEMENT OF FACTS

**A.     New Summit and the Rideouts Enter into a Loan Agreement**

In early 2015, the Rideouts were interested in purchasing an investment property in the Bellingham area and began working with their real estate agent Monte D. Young to find an appropriate property.  Clark Decl. ¶ 3.  In July 2015, the Rideouts identified the Subject Property, an eight-unit apartment complex, and entered into a Purchase and Sale Agreement.  *Id*.

The Rideouts obtained preapproval for a $840,000.00 construction loan from Washington Federal for the purchase and remodel of the Subject Property.  Clark Decl. ¶ 4. However, given the purchase price and the estimated cost of remodel, Washington Federal required the Rideouts to contribute a sizeable amount of capital—in excess of $250,000.00, which the Rideouts simply did not have. *Id.*

Defendants approached New Summit's CEO, Tim Clark, a long-time friend, about helping Defendants finance their purchase and renovation of the Subject Property. Clark Decl. ¶ 5, see also **Exhibit 1**, Complaint, Dkt. 1, ¶¶ 3.4-3.7. Mr. Clark had loaned the Rideouts money in the past and was willing to explore the opportunity with them.  *Id*.  New Summit ultimately agreed to loan the Rideouts the additional monies they needed to make up the shortfall, and Mr. Clark worked directly with Washington Federal to negotiate the terms of the loan. *Id*.

On October 2, 2015, Mr. Clark sent an email to Washington Federal confirming the terms of New Summit's loan to the Rideouts to purchase the Subject Property.  Clark Decl. ¶ 6, **Exhibit 2**. Washington Federal responded to Mr. Rideout expressing concern about the proposed loan terms

**MOTION FOR ISSUANCE OF A PREJUDGMENT WRIT OF ATTACHMENT** - 4
{21731/28712/V609160.DOCX}

LASHER HOLZAPFEL SPERRY & EBBERSON

ATTORNEYS AT LAW
2600 TWO UNION SQUARE
601 UNION STREET
SEATTLE WA 98101-4000
TELEPHONE 206 624-1230
Fax 206 340-2563

because the three to four year payoff would need to be factored into the loan calculation and would ultimately drive the monthly amount to service the debt. *Id*., **Exhibit 3**. In light of this issue, New Summit agreed to extend the loan repayment date to November 1, 2025 to ensure that the monthly payments would be significantly lower. *Id*.

New Summit and the Rideouts agreed to the following terms on the loan:

| | |
|---|---|
| Loan Amount: | $230,000 |
| Loan term: | The loan will be due November 1, 2025; |
| Loan Extension: | The Borrower shall have the right to extend the loan for an additional one year period upon the payment of an extension fee to the Lender on or before November 1, 2025, in the amount of two thousand three hundred dollars ($2,300); |
| Interest Rate: | Greater rate of 4% or 200 basis points above the ten-year treasury rate on the principal. Interest shall accrue and be payable on the earlier of (1) November 1, 2018; (2) the refinancing of the Washington Federal first mortgage in the approximate amount of $905,000; or (3) the date of sale of the Subject Property. |
| Security: | Personal Promissory Note from Gerry Rideout. |
| Profit Participation: | Lender shall receive twenty percent of the Net Profits of the project. This net profit interest shall be due on the sale of the property. |

Clark Decl. ¶ 7, **Exhibit 4**.

**MOTION FOR ISSUANCE OF A PREJUDGMENT WRIT OF ATTACHMENT** - 5
{21731/28712/V609160.DOCX}

LASHER HOLZAPFEL SPERRY & EBBERSON

ATTORNEYS AT LAW
2600 TWO UNION SQUARE
601 UNION STREET
SEATTLE WA 98101-4000
TELEPHONE 206 624-1230
Fax 206 340-2563

In addition, after the Washington Federal loan underwriting and final approval process, the loan amount that Washington Federal actually approved was not sufficient to fund both the total purchase and the renovation budget, which the Rideouts had previously submitted to Washington Federal. Clark Decl. ¶ 9. As a result, New Summit would ultimately agree to increase the loan amount from $230,000 to $334,000, so that the Rideouts would be able to complete their purchase and renovation of the Subject Property and have access to working capital. *Id*.

In November 2015, Washington Federal funded the loan to purchase the real property and the Rideouts took possession of the Subject Property. Clark Decl. ¶ 10. During this same time period, New Summit funded the entire $334,000 directly to the Rideouts. *Id*. Renovations to the Subject Property would begin shortly after the Rideouts took possession. *Id*.

**B.     Issues Arise With Defendants' Performance of Their Obligations Under the Loan**

Despite taking possession of the Subject Property in November 2015 and beginning to collect rents/profits from the Subject Property, the Rideouts failed to perform numerous obligations under the loan agreement between November 2015 and October 2017. Clark Decl. ¶ 11. For example, the Rideouts did not produce monthly reports or financials, did not make any payments on New Summit's loan, and did not make any payments pursuant to the profit sharing agreement. *Id*.

As for the operational financials, New Summit repeatedly requested monthly reports of expenses and income prior to filing this lawsuit. Clark Decl. ¶ 12. However, the Rideouts did not produce any of the requested records until January 4, 2019 in response to this litigation. *Id*., **Exhibit 5**. These financial statements reflect that there was sufficient net income during the period

**MOTION FOR ISSUANCE OF A PREJUDGMENT WRIT OF ATTACHMENT** - 6
{21731/28712/V609160.DOCX}



ATTORNEYS AT LAW
2600 TWO UNION SQUARE
601 UNION STREET
SEATTLE WA 98101-4000
TELEPHONE 206 624-1230
Fax 206 340-2563

between December 2015 and December 2017 to pay the amounts due on New Summit's loan and make payments pursuant to the profit sharing agreement.

In July 2017, the Rideouts refinanced the Washington Federal loan, triggering their obligation to begin paying interest. Clark Decl. ¶ 13. Nonetheless, the Rideouts did not make the payments as they had promised. *Id*. When Mr. Clark raised this issue with the Rideouts, Mrs. Rideout confirmed the obligation, but indicated that she had forgotten about the need to start making payments. *Id*., **Exhibit 6-7**. Mrs. Rideout also indicated that expenses were high and they did not have the money. *Id*.

However, the financial statements recently produced contradict Mrs. Rideout's assertion. In fact, the statements for the period between July 2017 and December 2018 reflect the Rideouts had a net income of $45,595.00 after all operating expenses and payments on the Washington Federal loan. Clark Decl. ¶ 12, **Exhibit 5**. As New Summit's loan accrued interest of $23,616.45[1] during this same period, the $45,595.00 the Rideouts realized in net profit was more than sufficient to cover New Summit's payments. *Id*. Instead, during this period, the Rideouts only paid $6,811.00 to New Summit in payments under the profit sharing agreement and paid zero dollars in interest. *Id*. As Defendants have not produced any supporting documents, including bank statements, invoices, cancelled checks or other proof of payments which would explain the discrepancy, it appears that the Rideouts paid themselves $38,784.00 of the $45,595.00 directly, rather than timely meeting their obligations under the loan agreement.

---

[1] A copy of New Summit's interest calculation spreadsheet for this loan is attached as **Exhibit 12.**

**MOTION FOR ISSUANCE OF A PREJUDGMENT WRIT OF ATTACHMENT** - 7
{21731/28712/V609160.DOCX}



ATTORNEYS AT LAW
2600 TWO UNION SQUARE
601 UNION STREET
SEATTLE WA 98101-4000
TELEPHONE 206 624-1230
Fax 206 340-2563

By September 2017, the relationship between the parties began to deteriorate and Mr. Clark became concerned that Defendants, who had yet to execute the promissory note, were not satisfying the promises they had made. Clark Decl. ¶ 14, **Exhibit 7**. Mr. Clark sent the Rideouts an email where he raised concern of the status of the project and the fact that they had not memorialized the terms of their agreement to writing. *Id*. In response, Mrs. Rideout confirmed that there was nothing in writing, but that she and her husband "would always honor whatever agreement" they had made. *Id*. Even more, Mrs. Rideout confirmed that she and her husband could not have purchased the Subject Property without the loan from New Summit. *Id*. Mrs. Rideout stated that the Rideouts did not have money to make the payments required by the 80/20 split of revenues.[2] *Id*. Mrs. Rideout also confirmed the obligation to make monthly payments on New Summit's loan, stating "I was waiting until next month to do the 80/20 split along with the management fee and making your mortgage payment." Clark Decl., ¶ 14, **Exhibit 7**.

Mr. Clark's concerns proved to be warranted. Defendants listed the Subject Property for sale in March, 2018 without executing any security documents or providing New Summit with an accounting. Clark Decl. ¶ 15. Throughout this time, Plaintiff continued to make repeated requests that Defendants execute the promissory note they previously agreed to provide. *Id.* These requests were rebuffed. *Id*. Defendants continued to list the Subject Property for sale and dropped the price multiple times, from its original list price of $1,995,000.00 in March 2018 to $1,595,000.00 in October 2018. *Id*. During this period, without consulting New Summit, Defendants terminated

---

[2] Mrs. Rideout appears to have made this claim in spite of the fact that their recently-produced financials reflect that the Rideouts realized almost $50,000.00 in net profit during this period.

**MOTION FOR ISSUANCE OF A PREJUDGMENT WRIT OF ATTACHMENT** - 8
{21731/28712/V609160.DOCX}



ATTORNEYS AT LAW
2600 TWO UNION SQUARE
601 UNION STREET
SEATTLE WA 98101-4000
TELEPHONE 206 624-1230
Fax 206 340-2563

their listing agent, Coldwell Banker, on July 13, 2018, and instead listed the property with Monte Young of Bellweather Real Estate Company. *Id*. As New Summit has now learned, Mr. Young is also the buyer in the pending sale of the Subject Property for $1,500,000.00. *Id*., **Exhibit 8**.

New Summit attempted to work with Defendants to resolve the dispute and even had its counsel prepare proposed documents for the Defendants' consideration. Small Decl., **Exhibit 2**. However, Defendants effectively terminated all communication starting June 7, 2018, with the limited exception of two phone calls in September 2018, when Mr. Rideout promised his lawyer would review the proposed documents. Clark Decl., ¶ 19. No such review appears to have occurred and the Rideouts continued to ignore New Summit's attempts to resolve this matter without litigation. *Id*.

**C.     Illiquidity of Defendants and Transfer of Title to Defendants Other Assets**

Contrary to Defendants' arguments in their response to Plaintiff New Summit's motion for a temporary restraining order, New Summit has ample evidence of the Rideouts' illiquidity. First, Mr. Clark's nearly fifty-year course of dealing with the Rideouts has been marked by large loans he has personally made to them. Clark Decl. ¶ 16. These loans were not for nominal amounts of money, nor were they for luxuries; Mr. Clark has provided loans to pay for the Rideouts' personal expenses. *Id*. These loans sometimes exceeded $100,000.00 and what is most notable about these loans is that the Rideouts were unable to pay them back, so Mr. Clark, in deference to their friendship, retroactively characterized them as gifts and wrote off the debt. *Id*. In total, Mr. Clark estimates he has given the Rideouts over $150,000.00 in "loans" or "gifts" over the years. *Id*.

MOTION FOR ISSUANCE OF A PREJUDGMENT
WRIT OF ATTACHMENT - 9
{21731/28712/V609160.DOCX}

LASHER
HOLZAPFEL
SPERRY &
EBBERSON

ATTORNEYS AT LAW
2600 TWO UNION SQUARE
601 UNION STREET
SEATTLE WA 98101-4000
TELEPHONE 206 624-1230
Fax 206 340-2563

Further, the course of conduct between the parties with regard to *this* transaction reflects the Rideouts are illiquid. As is clear from the e-mails exchanged between the Rideouts and Mr. Clark as late as 2017, the Rideouts claimed that they did not have sufficient liquidity to finance any portion of the costs associated with this transaction without New Summit's help. Clark Decl., **Exhibit 7**.

Critically and finally, New Summit has obtained evidence that the Rideouts have been transferring title to their other assets to shell limited liability companies in apparent response to this lawsuit. Specifically, on July 10, 2018, Mr. Clark sent the Rideouts an e-mail trying to schedule a meeting so they could discuss the loan. Clark Decl. ¶ 17, **Exhibit 9**. On July 13, 2018, the Rideouts abruptly terminated their relationship with the listing agent and ceased responding to Mr. Clark's e-mails. *Id*., **Exhibit 10**. By August 2, 2018, the Rideouts had surreptitiously formed a new Washington limited liability company, "Broadway Park, LLC." Small Decl., **Exhibit 2**. Subsequently, on August 13, 2018, Mr. Clark notified the Rideouts that he was increasingly frustrated with their refusal to respond to his e-mails and their ongoing refusal to execute the promissory note that they had agreed to in 2015. Clark Decl., **Exhibit 11**. In this e-mail, Mr. Clark notified the Rideouts that he intended to seek legal remedies should they continue to stonewall his attempts to obtain the promised security for his sizeable loan. *Id*. New Summit has now learned that within 24 hours of Mr. Clark sending this e-mail, the Rideouts transferred property they owned personally, via Quit Claim Deed, to Broadway Park, LLC. Small Decl., **Exhibit 3**.

**MOTION FOR ISSUANCE OF A PREJUDGMENT WRIT OF ATTACHMENT** - 10
{21731/28712/V609160.DOCX}

LASHER HOLZAPFEL SPERRY & EBBERSON

ATTORNEYS AT LAW
2600 TWO UNION SQUARE
601 UNION STREET
SEATTLE WA 98101-4000
TELEPHONE 206 624-1230
Fax 206 340-2563

## III. LEGAL AUTHORITY

**A. New Summit Is Entitled To a Prejudgment Writ of Attachment**

Fed. R. Civ. P. 64 provides: "At the commencement of and throughout an action, every remedy available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment. But a federal statute governs to the extent it applies." Fed. R. Civ. P. 64(a).

Under Washington law, prejudgment attachment is governed by RCW 6.25 *et seq.* which expressly provides that a claimant is entitled to a prejudgment writ of attachment in order to obtain security for satisfaction of any judgment the claimant may recover.

Pursuant to RCW 6.25.020:

> The plaintiff at the time of commencing an action, or at any time afterward before judgment, may have the property of the defendant, or that of any one or more of several defendants, attached in the manner prescribed in this chapter, as security for the satisfaction of such judgment as the plaintiff may recover.

In order to prevail on a motion for issuance of a prejudgment writ of attachment, a claimant must establish two elements; (1) that there is probable cause to believe that the alleged statutory ground for attachment exists; and (2) the probable validity of the claim sued on. RCW 6.25.070(1).

### 1. A Clear Ground for Attachment Exists

With respect to the first element, it is undeniable that one or more statutory grounds for attachment and garnishment exist. Pursuant to RCW 6.25.030, issuance of a writ of attachment is proper under the circumstances of this case.

MOTION FOR ISSUANCE OF A PREJUDGMENT
WRIT OF ATTACHMENT - 11
{21731/28712/V609160.DOCX}

LASHER HOLZAPFEL SPERRY & EBBERSON

ATTORNEYS AT LAW
2600 TWO UNION SQUARE
601 UNION STREET
SEATTLE WA 98101-4000
TELEPHONE 206 624-1230
Fax 206 340-2563

The writ of attachment may be issued by the court in which the action is pending on one or more of the following grounds:

> **(7)     That the defendant is about to convert her property, or a part thereof, into money, for the purpose of placing it beyond the reach of his creditors;**
>
> ***
>
> **(10)    That the object for which the action is brought is to recover on a contract, express or implied.**

RCW 6.25.030. Ground (10) is satisfied because the claims against Defendants arise out of a breach of a loan agreement between the parties. Under the statute, this is sufficient grounds for attachment, and no additional grounds are required. *See INX, LLC v. Music Group Services, U.S., Inc.*, 2014 WL 51142 at *1 (W.D. Wash., Jan. 7, 2014) (holding that the fact an action was brought to recover on a contract was a clear ground for attachment).

Nonetheless, New Summit has also demonstrated Ground (7) by virtue of the fact Defendant Cornwall is under contract for the sale of the Subject Property, a sale that is set to close on February 19, 2019. As it appears Defendants have previously appropriated net profits from the Subject Property while representing to New Summit that no such profits were generated, New Summit is justifiably concerned that the sale will place the proceeds beyond its reach. New Summit's concern is amplified by the fact that the day after Mr. Clark first advised the Rideouts of his intent to file a lawsuit against them, the Rideouts transferred their personal real property assets via Quit Claim Deed to a newly-created limited liability company, Broadway Park, LLC. Clark Decl. ¶ 18, **Exhibit 11**; Small Decl., **Exhibit 3**. This sudden attempt to reallocate assets constitutes evidence of

**MOTION FOR ISSUANCE OF A PREJUDGMENT WRIT OF ATTACHMENT** - 12
{21731/28712/V609160.DOCX}

LASHER HOLZAPFEL SPERRY & EBBERSON

ATTORNEYS AT LAW
2600 TWO UNION SQUARE
601 UNION STREET
SEATTLE WA 98101-4000
TELEPHONE 206 624-1230
Fax 206 340-2563

the Rideout's intent to deprive New Summit of assets in the event of an adverse judgment. *See Glasser v. Blixseth*, 2015 WL 671634, at *2 (W.D. Wash. Feb. 17, 2015) (noting extremely suspicious bank transfers on the same day a lawsuit was filed, coupled with actual notice of pending claims, could be sufficient to warrant preliminary injunctive relief).

New Summit has met its burden of establishing the first element necessary for a writ of attachment — that a statutory ground for attachment exists.

### 2. New Summit Has Proven the Probable Validity of Its Claims.

To prove a claim for breach of contract, Plaintiff must demonstrate "a valid contract between the parties, breach, and resulting damage." *Lehrer v. State, Dept. of Social & Health Servs.*, 101 Wn.App. 509, 516 (2000).

Here, Plaintiff is able to demonstrate all elements of this claim. First, there is no dispute a valid contract exists. Defendants have admitted they entered into a loan agreement and profit sharing agreement with Plaintiff, where the principal amount of the loan is $334,000.00. Defendants have also admitted they agreed to pay New Summit 20% of the proceeds of the sale of the Subject Property.

Second, Defendants have, in fact breached the agreement in a number of ways:

- As the Defendants apparently do not dispute, they have never executed any form of security for the benefit of Plaintiff, personal promissory note or otherwise.

- Moreover, as it is now clear from Defendants' prior submission to this Court, they dispute whether Plaintiff was to receive 20% of the *monthly* rents from the Subject

**MOTION FOR ISSUANCE OF A PREJUDGMENT WRIT OF ATTACHMENT** - 13
{21731/28712/V609160.DOCX}

LASHER HOLZAPFEL SPERRY & EBBERSON

ATTORNEYS AT LAW
2600 TWO UNION SQUARE
601 UNION STREET
SEATTLE WA 98101-4000
TELEPHONE 206 624-1230
Fax 206 340-2563

Property pending its final sale. *Compare* Defendants' Opposition to TRO, Dkt. 13 & Declaration of Gerald Rideout, Dkt. 14, *with* Clark Decl., **Exhibit 4**. But, the e-mails exchanged between the parties are consistent with Plaintiff receiving twenty percent of the rental income paid to Plaintiff each month, after payment of interest on New Summit's loan. Clark Decl., **Exhibit 7**. Defendants had, in fact, made intermittent payments between October 2017 and December 2018. However, Defendants did not make any payments prior to October 2017. Equally as important, Defendants have refused to provide a complete accounting and/or supporting documentation related to monthly rental income and operating and renovation expenses.

- In direct contradiction to Mrs. Rideout's representations in 2017, the financial information that the Rideouts recently provided reflect that there was, at one time, sufficient net income to pay both the interest due under New Summit's loan and to make payments under the 80/20 income sharing agreement. However, the Rideouts did not make those payments. Clark Decl., **Exhibit 5**

- As reflected in the Declaration of Mr. Clark, Plaintiff has calculated the amount owed under the loan and profit sharing agreement as $ 497,725, well in excess of the amount of money the Defendants have indicated they owe. Though this number was derived from the financial information provided to New Summit, the Defendants have refused to provide any backup documents to support their calculation summaries. This is particularly concerning in light of the fact that the profit sharing

**MOTION FOR ISSUANCE OF A PREJUDGMENT WRIT OF ATTACHMENT** - 14
{21731/28712/V609160.DOCX}

LASHER HOLZAPFEL SPERRY & EBBERSON

ATTORNEYS AT LAW
2600 TWO UNION SQUARE
601 UNION STREET
SEATTLE WA 98101-4000
TELEPHONE 206 624-1230
Fax 206 340-2563

- agreement allocates the profit split *after* payment of the Washington Federal loan, closing costs, and certain other expenses, the documentation of which are maintained exclusively by the Rideouts. Clark Decl., **Exhibit 4**

- To that end, it appears Defendants have—whether by accident or design—reduced the amount of money due and owing under the profit sharing agreement. Defendants have represented to Mr. Clark that they drew over $175,000.00 in credit from the bank for the specific purpose of financing the renovation process. Clark Decl., ¶ 12. However, the recently-produced financials reflect that they only spent approximately $60,000.00 on these renovations. Clark Decl., **Exhibit 5**. As Plaintiff's share of the profits is calculated *after* full payoff of the Washington Federal loan, the difference between $175,000.00 and $60,000.00 should properly be allocated between the parties as part of the profit-sharing agreement.

- Finally, as Defendants concede, they became obligated to make interest payments on the principal balance, beginning when they refinanced their first mortgage. Clark Decl., **Exhibit 7**. Defendants have further admitted that they have not yet made any monthly interest payments, despite the fact that one of the triggering events for their interest payments to come due—the refinancing of the Washington Federal loan—having occurred in July, 2017.

Third, all of these breaches caused Plaintiff New Summit damage. Specifically, Defendants have failed to make numerous monthly payments, both for interest and for Plaintiff's 20% share of

**MOTION FOR ISSUANCE OF A PREJUDGMENT WRIT OF ATTACHMENT** - 15
{21731/28712/V609160.DOCX}

LASHER HOLZAPFEL SPERRY & EBBERSON

ATTORNEYS AT LAW
2600 TWO UNION SQUARE
601 UNION STREET
SEATTLE WA 98101-4000
TELEPHONE 206 624-1230
Fax 206 340-2563

the monthly rents, and has otherwise disputed the amount of interest and profit-sharing monies owed. Further, despite representing they were unable to make any payments on New Summit's loan, financial documents produced by Defendants reflect they realized almost $50,000 in profit between July 2017 and December 2018. Moreover, the uncertainty about the amount of money available for the profit sharing component of the parties' agreement represents a potentially significant component of the damages Plaintiff has incurred due to the Defendant's breach. Without a full and complete accounting of the amounts Defendants owe on their first loan, or an accounting of the expenses they have and will continue to incur (such as the expenses attendant to closing),[3] Plaintiff is entirely unable to determine whether any amount of money it ultimately receives is anywhere close to the 20% to which it is entitled.

Defendants are already in the process of transferring assets, such as other real property, to other entities for what appears to be minimal consideration. Further, Defendants' lack of supporting documentation and clarity in their record-keeping prevents Plaintiff from adequately assessing whether the amounts Defendants propose to hold in escrow is adequate to account for Plaintiff's twenty-percent share of the profits. Finally, because the Rideouts' refuse to execute the previously-agreed security, there is no mechanism in place to prevent the Rideouts from unilaterally withdrawing the bulk of the net proceeds and leaving Cornwall LLC otherwise unable to pay the balance of the debt. Accordingly, Plaintiff New Summit has demonstrated the probable validity of its breach of contract claim.

---

[3] As with many other documents which Plaintiff has requested but not received, no draft or final closing statement has been produced despite requests for same.

**MOTION FOR ISSUANCE OF A PREJUDGMENT WRIT OF ATTACHMENT** - 16
{21731/28712/V609160.DOCX}



ATTORNEYS AT LAW
2600 TWO UNION SQUARE
601 UNION STREET
SEATTLE WA 98101-4000
TELEPHONE 206 624-1230
Fax 206 340-2563

### 3. A Nominal Bond is Appropriate Under the Facts of This Case.

Prior to issuance of a prejudgment writ of attachment, a claimant must post a bond. The amount of the bond to be set is within the discretion of the Court.

> [B]efore the writ of attachment shall issue, the Plaintiff . . . shall execute and file with the clerk a surety bond or undertaking in the sum in no case less than three thousand dollars, in the superior court . . . and double the amount for which Plaintiff demands judgment, or such other amount as the court shall fix. . . .

RCW 6.25.080(1).[4]

The purpose of the bond is to provide a fund from which a party may seek payment in the event the writ of attachment is wrongfully, oppressively, or maliciously sued out.

In the instant case, good cause exists for the Court to exercise its authorized discretion to fix a nominal bond amount by virtue of the nature of New Summit's claims and the minimal impact of the relief sought. As previously stated, New Summit is not attempting to block Defendants from selling the Subject Property, nor is New Summit attempting to preclude Defendants from paying the balance due on their first priority deed of trust to Washington Federal or the other associated costs of sale. Rather, New Summit's aim is to secure the net proceeds from any sale to satisfy the amounts due under the loan agreement and profit sharing agreement. Defendants cannot claim that a writ of attachment securing the net proceeds of the sale of the Subject Property will injure or impact them, other than a potential delay in receiving the funds they are actually owed.

---

[4] See also RCW 4.44.470 which provides:

> Whenever by statute a bond or other security is required for any purpose in an action or other proceeding in a court of record and if the party shall apply therefor, the court shall have power to prescribe the amount of the bond or other security notwithstanding any requirement of the statute . . .

**MOTION FOR ISSUANCE OF A PREJUDGMENT WRIT OF ATTACHMENT** - 17
{21731/28712/V609160.DOCX}

LASHER HOLZAPFEL SPERRY & EBBERSON

ATTORNEYS AT LAW
2600 TWO UNION SQUARE
601 UNION STREET
SEATTLE WA 98101-4000
TELEPHONE 206 624-1230
Fax 206 340-2563

A bond amount of $5,000.00 is appropriate under the facts and circumstances of this case. Should Defendants claim that said bond amount is too low, both RCW 6.25 *et seq.* provides a mechanism whereby they may seek a higher bond. Based on the nature of New Summit's claims, the onus should be on Defendants to explain and justify a higher bond amount.

## VI. PROPOSED ORDER

The issuance of a prejudgment writ of attachment is appropriate considering the facts of this case and the likelihood that New Summit will be able to successfully prove its breach of contract claim. New Summit has submitted a proposed Order Issuing Prejudgment Writ of Attachment herewith.

DATED this 10th day of January, 2019.

                                          LASHER HOLZAPFEL
                                          SPERRY & EBBERSON PLLC

                                          */s/ Sean V. Small*
                                          */s/ Paul Spadafora*
                                          _____
                                          Sean V. Small, WSBA # 37018
                                          Paul Spadafora, WSBA # 49777
                                          ***Attorneys for Plaintiff***

**MOTION FOR ISSUANCE OF A PREJUDGMENT WRIT OF ATTACHMENT** - 18
{21731/28712/V609160.DOCX}



ATTORNEYS AT LAW
2600 TWO UNION SQUARE
601 UNION STREET
SEATTLE WA 98101-4000
TELEPHONE 206 624-1230
Fax 206 340-2563

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 10th, 2019, I caused the foregoing pleading to be electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following counsel:

Hans P. Juhl, WSBA #33116
Madeline S. Davis, WSBA #51261
Attorneys for Defendants
RYAN, SWANSON & CLEVELAND, PLLC
1201 Third Avenue, Suite 3400
Seattle, Washington  98101-3034
juhl@ryanlaw.com
davis@ryanlaw.com

DATED this 10th day of January, 2019 at Seattle Washington

*/s/ Ellen M. Krachunis*
_____
Ellen M. Krachunis
Legal Assistant

**MOTION FOR ISSUANCE OF A PREJUDGMENT WRIT OF ATTACHMENT** - 19
{21731/28712/V609160.DOCX}

LASHER
HOLZAPFEL
SPERRY &
EBBERSON

ATTORNEYS AT LAW
2600 TWO UNION SQUARE
601 UNION STREET
SEATTLE WA 98101-4000
TELEPHONE 206 624-1230
Fax 206 340-2563